UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD JOSEPH SCHREIBER, SR.,

Plaintiff,

v.

Case No. 25-cv-1712-pp

MATT CAIN, *et al.*,

Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS MOOT PLAINTIFF'S MOTION FOR INJUNCTION (DKT. NO. 15), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 17) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Richard Joseph Schreiber, Sr., who previously was confined at the Brown County Jail and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, addresses his motion for injunction, dkt. no. 15, and his motion to appoint counsel, dkt. no. 17.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds

1

exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 10, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $33.52. Dkt. No. 5. The court received that fee on January 26, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee.

## II.    Screening the Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff sues Matt Cain and Shift Supervisor Carlson of the Green Bay Police Department; Rod Goldhahn; the Green Bay Police and Fire Commission; John Does, sued as "Board of Professional Standards – numerous police officers – at least 12"; and John Does, sued as "All officers involved in any police call involved with myself and my family." Dkt. No. 1 at 1. In the complaint, the plaintiff alleges that the defendants discriminated against him regarding several separate incidents in which he contacted the authorities.

First, the plaintiff alleges that beginning in 2021, his children were placed in foster care. Id. at 2. He states that he learned that their foster mother beat his children and drugged them at night with melatonin. Id. The plaintiff allegedly first reported this to social services and, when nothing was done, he called the police at least four times for welfare checks and to press charges against the foster mother. Id. at 2-3. The plaintiff states that the police responded that they would not charge the foster mother and that everything looked fine. Id. at 3. The plaintiff alleges that "social services" said he was over-exaggerating the events and that everything was fine, which the plaintiff says discriminated against him and prevented him from exercising his rights to press charges and remove his children from the foster home. Id. One day in 2021, the plaintiff allegedly learned from his children's mother that his youngest son had been forced to eat a big bag of "flaming hot Cheetos" with nothing to drink. Id. The plaintiff states that he called the foster mom, the police and social services, demanding that charges be pressed against the foster parent. Id. at 5. Again, the Green Bay Police Department allegedly did nothing, and after voicing his opinion to them and social services, the plaintiff was put in jail, charged with terrorist threats, placed on TV and slandered for trying to protect his children. Id. The plaintiff alleges that he was held for six months in the Brown County Jail. Id. He says that the only good thing is that his kids were taken out of that home and placed with their mother. Id. The plaintiff alleges that Green Bay police still have not charged the foster parent with beating and torturing his sons. Id. at 6.

4

The plaintiff describes a second incident, in which he allegedly called the Green Bay Police Department after having been assaulted and threatened at a July 4 celebration after which he had to lock in his vehicle with his children and their mother. Id. He says that the police showed up and did absolutely nothing, saying that it must have been over drugs. Id. The plaintiff states that he merely was watching the fireworks show with his children at a motel where they were staying; the people came back and broke windows in the plaintiff's vehicle and he called the police. Id. When the police arrived, they allegedly told him to go back to his room or be charged with disorderly conduct. Id.

Third, the plaintiff states that he moved out of the motel and finally had a home to rent but that an individual deceived him about taking over the lease. Id. at 6-7. The plaintiff alleges that he gave the individual $1,600 and that he and his family moved in and planned to take over the residence. Id. at 7. He says he then noticed that the individual was not leaving and that his tools were missing. Id. The plaintiff states that the individual threw them out by threatening them with physical harm if they did not leave. Id. The plaintiff allegedly obtained a restraining order against him to force his family back into the home. Id. He states that the police did not enforce the order. Id. Then, the "parties" allegedly put all their property outside in the rain and the plaintiff tried to press charges for theft and criminal damage to property, but they laughed, called it "civil" and asked him for the receipts for his property. Id. The plaintiff states that he suffered discrimination and equal protection violations. Id.

Fourth, the plaintiff alleges that he called the Green Bay Police Department because the owner of the motel where he was staying stole his Quest food card and spent $1,200 a month for about five months. Id. The plaintiff states that when he found out that his card was being used, he cancelled it and called the police to press charges. Id. He allegedly could not press charges because the motel owner had made the plaintiff give him the card when the plaintiff was behind in rent, or the plaintiff and his children would have been homeless. Id. The plaintiff states that he reluctantly gave him the card, he kept it and the plaintiff missed his six-month recertification. Id. at 8. The plaintiff says that the Green Bay Police Department again said that this was just a civil matter, even though the motel owner forged the plaintiff's housing documents. Id. Officer Carlson allegedly was involved in this incident. Id. The plaintiff states that the only department that did not deny his request at the time was the Police and Fire Commission, which is looking into the 2025 events. Id.

Fifth, the plaintiff alleges that in August 2025, the individual against whom he had the restraining order chased him down in a Walmart parking lot. Id. The plaintiff states that the individual would have smashed into him if the plaintiff hadn't slammed on his brakes. Id. He says that he called to make a police report and have the individual charged, but they did nothing about it. Id. The plaintiff states that the police were more interested in jailing him for going to the house he was supposed to rent to try to retrieve his belongings, even after he established that he had lived there for months and had not been

evicted. Id. The plaintiff says that he went to the residence while this individual was gone, but that the individual arrived with a mallet and threatened the plaintiff for being there. Id. at 8-9. The plaintiff states that when he tried to leave the individual rammed the plaintiff's car to try to keep him there, but the plaintiff was scared and left and went to work. Id. at 9. He says he found out the next day that the police had a "manhunt" for him and that they had charged him with theft, bail jumping and disorderly conduct for taking his own property. Id. The plaintiff says that the police discriminated against him. Id. They allegedly "hunted [him] down like a dog" with six squad cars and guns drawn. Id. The Green Bay Police Department officers allegedly searched the plaintiff and his car, and they ridiculed and embarrassed him during the search. Id. The plaintiff states that he was investigated and cleared by Commander Matt Cain and the Professional Standards Division. Id. at 9-10.

The plaintiff states that every incident he reported was "never treated fairly (discrimination) and frowned upon and unjust actions because [he's] brown and [he] exercise[d] [his] freedom of speech[.]" Id. at 10. For relief, the plaintiff seeks monetary damages and criminal charges brought against each officer. Id. at 4.

C.     Analysis

The plaintiff alleges that the defendants treated him unfairly and discriminated against him based on the way they responded to his calls about various issues. The Fourteenth Amendment's Equal Protection Clause states that "[n]o State shall make or enforce any law which shall . . . deny to any

7

person within its jurisdiction the equal protection of the laws." "]T]he Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class . . ." Reget v. City of La Crosse, 595 F.3d 691, 695 (7th Cir. 2010); see also Chavez v. Ill. State Police, 251 F.3d 612, 635-36 (7th Cir. 2001) ("To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.").

At the end of his complaint, the plaintiff states that he was not treated fairly regarding the incidents he described in the complaint because he is brown. Race is a suspect class, and discrimination based on race is subject to strict scrutiny. Vision Church v. Village of Long Grove, 468 F.3d 975, 1000 (7th Cir. 2006). But the plaintiff does not allege that he was treated differently than any similarly situated individuals of other races. See Brown v. Budz, 398 F.3d 904, 916 (7th Cir. 2005) ("To establish a prima facie case of discrimination under the equal protection clause, [a plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class"). The plaintiff's conclusory allegation that the incidents described in the complaint occurred because he is brown does not allow for an inference that the defendants had a discriminatory purpose. "Discriminatory purpose means more than simple knowledge that a particular outcome is the likely consequence of an action; rather, discriminatory purpose requires a defendant to have selected a particular course of action at least in part

'because of' . . . its adverse effects upon an identifiable group." <u>Alston v. City of Madison</u>, 853 F.3d 901, 907 (7th Cir. 2017). The plaintiff has not stated an equal protection claim.

The plaintiff alleges that the defendants' actions did not allow him to press charges against the foster mother and the individual who forced him to move out of the house he rented. But "there is no 'constitutional right to have the police investigate [any] cause of action at all, still less to do so to [anyone's] level of satisfaction." <u>Harer v. Casey</u>, 962 F.3d 299, 306 (7th Cir. 2020) (quoting <u>Rossi v. City of Chicago</u>, 790 F.3d 729, 735 (7th Cir. 2015)). "[M]ere inactivity by police does not give rise to a constitutional claim." <u>Id.</u>

The plaintiff has not stated a claim for violation of his constitutional rights. In addition, the complaint violates joinder rules. Although it is appropriate for a plaintiff to file several claims against the same defendant, a plaintiff cannot bring unrelated claims against different defendants in the same case. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); <u>George</u>, 507 F.3d at 607; <u>Wheeler v. Wexford Health Sources, Inc.</u>, 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions").

9

For example, if a plaintiff has one claim against Defendants A, B, C and D, and an unrelated claim against Defendants A, B and E, if the plaintiff wants to proceed with both claims in the same case Rules 18 and 20 require that he dismiss defendants C, D and E. That way, he can proceed against the two defendants (A and B) who are common to both claims. If the plaintiff wants to pursue clams against defendants C, D and E, he must file separate lawsuits. To be clear, under Rule 18 the plaintiff can join as many *claims* as he wants against an opposing party, but in doing so he must still comply with Rule 20.

The plaintiff's complaint violates Rules 18 and 20 because it attempts to bring unrelated claims against multiple defendants. The complaint describes at least five separate incidents that took place over four to five years in which the plaintiff alleges he was treated unfairly. The court will give the plaintiff an opportunity to file an amended complaint. If the plaintiff does so, he must follow the guidelines in the preceding paragraphs—if he has three claims that involve the same four defendants, he may bring all those claims against all those defendants in one lawsuit. But if he has three different claims against three different defendants, he must bring three different lawsuits—one against each of those defendants.

The court is enclosing a copy of its amended complaint form. The plaintiff must use this form for his amended complaint. See Civil Local Rule 9(b) (E.D. Wis.). The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key

10

facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court or other readers back to facts in the previous complaint.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

### III. Plaintiff's Motion for Injunction (Dkt. No. 15)

The plaintiff asks for an order directing the Shawano County Jail and Work Release Center "to allow him access to copies for the courts in order to be treated fairly and not discriminated against for filing in your courts." Dkt. No. 15 at 2. It is not clear what specific relief the plaintiff seeks—he does not explain why he needs papers from the Shawano County Jail and Work Release Center, what the papers relate to or why he can't get them himself. In any event, the plaintiff no is longer confined at the Shawano County Work Release

11

Center. So any request for injunctive relief regarding his confinement there is moot. The court will deny as moot the plaintiff's motion for injunction. Id.

The plaintiff also asks the court to make copies and return to him original documents he submitted along with his motion. The court cannot return to the plaintiff his "original" documents—they now belong to the court. The plaintiff may purchase from the Clerk of Court copies of documents for $0.10 per page. The plaintiff may write a letter to the Clerk of Court if he would like to purchase copies.

IV.     Plaintiff's Motion to Appoint Counsel (Dkt. No. 17)

The plaintiff has filed a motion to appoint counsel. Dkt. No. 17. He says that he has no money and has been incarcerated for nine months. Id. at 2. The plaintiff states that he reached out to several attorneys but has not received a response or they say they won't take his case. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been

effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering,

13

preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

Although the plaintiff says that he has contacted attorneys to try to find one on his own, he has not provided the court with the responses he received or the names of the attorneys he contacted. The plaintiff has not satisfied the threshold requirement of trying to find a lawyer on his own. Even if he had, the plaintiff's circumstances have changed in that he recently was released from confinement. He now has more resources available to litigate this case. In addition, the plaintiff's claim is not complex, and he is competent to proceed on his own at this stage of the case. The court will deny without prejudice the plaintiff's motion to appoint counsel. If, later, the case becomes too complex for the plaintiff to handle on his own, he may renew his motion.

## V.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion for injunction. Dkt. No. 15.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 17.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so by the end of the day on **July 31, 2026**. If the plaintiff files an amended complaint by the end of the day on July 31, 2026, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the plaintiff does not either file an amended complaint or a request for more time to file one by the end of the day on July 31, 2026, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the plaintiff must pay the $316.48 balance of the filing fee to the court as he is able.

The court **ORDERS** that the plaintiff must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 6th day of July, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

16